*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: August 18, 2016        523489
_____

In the Matter of STEVEN
   GLICKMAN,
                  Appellant-
                  Respondent,

    v

ZACKARY LAFFIN et al.,
                  Respondents-
                  Appellants,
                  et al.,
                  Respondents.

(Proceeding No. 1.)

(And Another Related Proceeding.)       MEMORANDUM AND ORDER
_____

In the Matter of ZACKARY
   LAFFIN et al.,
                  Respondents-
                  Appellants,

    v

STEVEN GLICKMAN,
                  Appellant-
                  Respondent,
                  et al.,
                  Respondents.

(Proceeding No. 3.)
_____

Calendar Date: August 18, 2016

Before: Garry, J.P., Egan Jr., Devine, Mulvey and Aarons, JJ.

_____

     Pheterson Spatorico Neilans LLP, Rochester (Kamran Hashmi
of counsel), for appellant-respondent.

Sinnreich Kosakoff & Messina, LLP, Central Islip (John Ciampoli of counsel), for respondents-appellants.

_____

Aarons, J.

Cross appeal from an order of the Supreme Court (Hartman, J.), entered August 10, 2016 in Albany County, which, among other things, granted petitioners' application, in proceeding No. 3 pursuant to Election Law § 16-102, to declare invalid the designating petitions naming Steven Glickman as the Democratic Party and Working Families Party candidate for the public office of State Senator for the 55th Senate District in the September 13, 2016 primary election.

Steven Glickman filed designating petitions with respondent New York State Board of Elections naming him as the Democratic Party and Working Families Party candidate for the public office of State Senator for the 55th Senate District in the September 13, 2016 primary election. Zackary Laffin, Silvio Palermo and John D. Moffit Jr. (hereinafter collectively referred to as objectors) filed written objections with the State Board challenging, as is relevant here, the validity of the designating petitions, claiming that Glickman failed to meet the mandated residency requirements of the NY Constitution in that he has not resided continuously in New York for five consecutive years nor in the Senate District for one year immediately preceding the election. Glickman commenced proceeding No. 1 and proceeding No. 2 seeking an order validating his designating petitions for the office at issue for the Democratic Party and Working Families Party, respectively. Thereafter, objectors commenced proceeding No. 3 seeking to invalidate the subject designating petitions and enjoining the State Board from placing Glickman's name on the ballot for the September 13, 2016 primary election.

Following a hearing on all three petitions, Supreme Court, among other things, granted objectors' application to invalidate the designating petitions, finding that, although Glickman met the one-year residency requirement, the fact that Glickman registered to vote in Washington, D.C. in 2014 precluded him, as a matter of law, from establishing the requisite five-year continuous residency in New York. Glickman appeals and objectors

cross appeal.[1]

NY Constitution, article III, § 7 provides, in relevant part: "No person shall serve as a member of the legislature unless he or she is a citizen of the United States and has been a resident of the state of New York for five years, and, except as hereinafter otherwise prescribed, of the assembly or senate district for the [12] months immediately preceding his or her election." Election Law § 1-104 (22) defines residence as "that place where a person maintains a fixed, permanent and principal home and to which he [or she], wherever temporarily located, always intends to return." It is well recognized that an individual can maintain more than one residence, but can choose only one for Election Law purposes (see People v O'Hara, 96 NY2d 378, 384 [2001]).

"The question of residence is a factual one, based on a variety of factors and circumstances" (Matter of Weiss v Teachout, 120 AD3d 701, 702 [2014] [internal quotation marks and citations omitted]; see Matter of Jones v Blake, 120 AD3d 415, 416 [2014], lv denied 23 NY3d 908 [2014]; Matter of Fernandez v Monegro, 10 AD3d 429, 430 [2004]). "The crucial determination whether a particular residence complies with the requirements of the Election Law is that the individual must manifest an intent, coupled with physical presence 'without any aura of sham'" (People v O'Hara, 96 NY2d at 385, quoting Matter of Gallagher v Dinkins, 41 AD2d 946, 947 [1973], affd 32 NY2d 839 [1973]). To that end, "[t]he party challenging residence has the burden of proof by clear and convincing evidence" (Matter of Weiss v Teachout, 120 AD3d at 702; see Matter of Shafer v Dorsey, 43 AD3d 621, 622 [2007], lv denied 9 NY3d 804 [2007]).

We disagree with the interpretation by Supreme Court and the dissent that Glickman's act of registering to vote in Washington, D.C. in the November 4, 2014 election precludes Glickman, as a matter of law, from selecting New York as his residence for candidacy purposes. We do not believe that such act by itself amounts to a candidate's manifestation of an intent to remain for a time in the locality where such registration took place.

---

[1] Objectors' argument advancing an alternative ground for affirmance is properly before us; however, because they were not aggrieved by Supreme Court's order, their cross appeal is dismissed (see Maldonado v DiBre, 140 AD3d 1501, 1503 n 3 [2016]).

Residency, under New York's Election Law, involves a holistic examination of various factors and cannot be determined or expressed at a fixed point (see Matter of Weiss v Teachout, 120 AD3d at 702; cf. Matter of Willkie v Delaware County Bd. of Elections, 55 AD3d 1088, 1090-1091 [2008]).  As such, while a voter's registration is a significant factor in the residency calculus (cf. Matter of Meyer v Whitney, 132 AD3d 1062 [2015], lv denied 26 NY3d 909 [2015]; Matter of Maas v Gaebel, 129 AD3d 178 [2015]) and may ultimately be determinative (see Matter of Thompson v Hayduk, 45 AD2d 955, 956 [1974], affd 34 NY2d 980 [1974]), it is just one factor that must be examined in determining a candidate's residency (see Matter of Jones v Blake, 120 AD3d at 416; Matter of Stavisky v Koo, 54 AD3d 432, 434 [2008]; Matter of Bastone v Cocco, 230 AD2d 950, 951 [1996], appeal dismissed and lv denied 88 NY2d 971 [1996]).[2]  We do not read Matter of Thompson v Hayduk (supra) as creating a bright-line rule for determining residency as it was reached upon a consideration of "the proof adduced" (id. at 956).  Indeed, a determination of a person's residence depends upon "an individual's expressed intent and conduct" (People v O'Hara, 96 NY2d at 384).

Applying these principles, testimony presented at the hearing, which Supreme Court found credible, established that Glickman left his father's home in Tonawanda, New York in 2007 in order to attend college and graduate school in Maryland and, eventually, moved to the Washington, D.C. area.  During this time, Glickman returned to his father's home multiple times a year.  He kept personal belongings at the Tonawanda home and continued to use that mailing address for his driver's license, credit card and bank statements, and other bills.  Glickman also retained his doctor and dentist in New York during the period in question, as well as maintained his membership in a New York synagogue, where he participated in services, including being the Shofar blower in the Jewish New Year services each year since 2007.  Following the purchase of a vehicle in 2013, Glickman stored that vehicle in his father's garage during the winter months.

From October 2013 until March 2015, Glickman lived in a

---

[2]  In Matter of Meyer v Whitney (supra) and Matter of Maas v Gaebel (supra), we held that, for voting purposes, an individual is presumed to be a resident of a locality where he or she registered to vote, but such presumption may be rebutted.

"community organizer's house" in Washington, D.C., during which time he was employed on a yearly basis with a consulting firm and as a part-time high school teacher.  Glickman testified that, although the better job opportunities remained in Washington, D.C., he was looking to return to New York.  In March 2015, Glickman returned to his Tonawanda home and, in May 2015, he re-registered to vote there.  In October 2015, Glickman moved and changed his voter registration to 207 Milburn Street in Rochester, New York, where he has signed two consecutive leases.  Glickman bought furniture for his home on Milburn Street, paid utilities and had bills sent there, and changed the address on his license to that address.

Under the circumstances here, the evidence adduced regarding compliance with the five-year residency requirement demonstrates Glickman's "legitimate, significant and continuing attachments" in order to establish New York as his residence for Election Law purposes (Matter of Ferguson v McNab, 60 NY2d 598, 600 [1983]).  Even if Glickman had registered and voted in Washington, D.C., based on how New York courts have interpreted Election Law § 1-104 (22), that, in and of itself, does not demonstrate as a matter of law that he intended to abandon his New York residence at the precise point of registering (cf. Matter of Hosley v Curry, 85 NY2d 447, 450 [1995]; see Matter of Jones v Blake, 120 AD3d at 416).[3]  Because objectors failed to establish by clear and convincing evidence any "aura of sham" in Glickman's electoral residency for the purpose of obtaining the candidacy (People v O'Hara, 96 NY2d at 385), the petitions should not have been invalidated.

Next, objectors assert, as an alternative ground for affirmance, that Glickman did not meet the NY Constitution requirement that he reside in the Senate District for one year immediately preceding the election as evidenced by a November 25, 2015 change to Glickman's voter registration that reflected his residential address at the home of his father's girlfriend, which was outside the 55th Senate District.  Testimony and documentary evidence at the hearing established that Glickman remained a resident of 207 Milburn Street in Rochester since October 2015

---

[3]  In Matter of Hosley v Curry (supra), even though the candidate registered to vote and, in fact, voted in different localities over a period of years, the Court of Appeals, upon an examination of relevant factors, held that the candidate did not intend to abandon his residence where he was ultimately elected; this holding applies here.

and had never resided at the out-of-district address.  Testimony by Glickman, which Supreme Court credited, confirmed that any change in address was unintentional and that he immediately changed his voter registration back to the Milburn Street address upon discovery of the error.  Notwithstanding their own investigatory measures, objectors failed to present sufficient evidence that Glickman resided outside the Senate District at issue or that the address listed as Glickman's residence on the designating petition is not where he resided for one year prior to the election (see e.g. Matter of Bastone v Cocco, 230 AD2d at 951).  As objectors failed to establish by clear and convincing evidence that Glickman did not meet the constitutional residency requirements for candidacy for the office for which he was nominated, Glickman's designating petitions should not have been invalidated.

        Garry, J.P., and Devine, J., concur.


Egan Jr., J. (dissenting).

        Zackary Laffin, Silvio Palermo and John D. Moffit Jr. (hereinafter collectively referred to as objectors) filed written objections with respondent New York State Board of Elections challenging, insofar as is relevant here, the validity of the designating petitions naming Steven Glickman as the Democratic Party and Working Families Party candidate for the public office of State Senator for the 55th Senate District in the September 13, 2016 primary election.  Specifically, objectors argued that Glickman failed to meet the residency requirements set forth in NY Constitution, article III, § 7, which provides, in relevant part, as follows: "No person shall serve as a member of the legislature unless he or she is a citizen of the United States and has been a resident of the state of New York for five years, and, except as hereinafter otherwise prescribed, of the assembly or senate district for the [12] months immediately preceding his or her election."  The parties stipulated that the five-year state residency period should be measured from the date upon which the term of office will commence, and that the one-year district residency requirement should be measured from the date of the election.  Accordingly, in determining whether, as a threshold matter, Glickman meets the five-year residency requirement, this Court must look to his activities in the five years preceding January 1, 2017.

        Both New York, where Glickman currently resides and has been registered to vote since May 2015, and the District of Columbia, where Glickman previously resided and registered to

vote in November 2014, define "residence" in substantially similar fashions (see Election Law § 1-104 [22]; DC Code § 1-1001.02 [16] [A]),[1] and there is absolutely no question that an individual may maintain more than one residence – either in different states or in different communities within the same state – at the same time (see People v O'Hara, 96 NY2d 378, 384 [2001]; Matter of Maas v Gaebel, 129 AD3d 178, 180 [2015]; Matter of Willkie v Delaware County Bd. of Elections, 55 AD3d 1088, 1089 [2008]).  That said, an individual who maintains multiple residences must choose one of them for electoral purposes – specifically, the residence to which he or she "has legitimate, significant and continuing attachments" (People v O'Hara, 96 NY2d at 385 [internal quotation marks and citation omitted]; accord Matter of Maas v Gaebel, 129 AD3d at 180; Matter of Willkie v Delaware County Bd. of Elections, 55 AD3d at 1089).

Although Glickman offered inconsistent testimony as to whether he ever registered to vote in the District of Columbia – variously testifying that he was registered to vote somewhere outside of New York at one point in time, that he never completed a voter registration form in the District of Columbia and that he did not remember if he ever filled out such a form – and the record on appeal does not contain the registration form itself, the voter profile maintained by the District of Columbia Board of Elections, which was entered into evidence at the hearing, nonetheless reflects that Glickman indeed registered to vote in the District of Columbia on November 4, 2014.  Notably, one of the requirements of a "qualified elector" in that locale is that he or she "[h]as maintained a residence in the District [of Columbia] for at least 30 days preceding the next election and does not claim voting residence or right to vote in any state or territory" (DC Code § 1-1001.02 [2] [C] [emphasis added]).

Even assuming that Glickman was unaware of that particular

_____

[1]  Election Law § 1-104 (22) defines residence as "that place where a person maintains a fixed, permanent and principal home and to which he [or she], whenever temporarily located, always intends to return."  Similarly, the term residence in the District of Columbia is defined as "the principal or primary home or place of abode of a person," which, in turn, means "that home or place in which the person's habitation is fixed and to which a person, whenever he or she is absent, has the present intention of returning after a departure or absence therefrom, regardless of the duration of the absence" (DC Code § 1-1001.02 [16] [A]).

requirement, we nonetheless are satisfied that, once Glickman registered to vote in the District of Columbia in November 2014, he effectively ended his residency in New York for purposes of NY Constitution, article III, § 7 (see Matter of Thompson v Hayduk, 45 AD2d 955, 956 [1974], affd 34 NY2d 980 [1974]).  In other words, while Glickman indeed could have maintained dual residences in New York and the District of Columbia during the five-year period at issue, he could only utilize one of those residences for electoral purposes — specifically, he could not purport to be a registered and eligible voter in the District of Columbia while simultaneously claiming to be a resident of New York for purposes of fulfilling the five-year residency requirement.  Simply put, by registering to vote in the District of Columbia in November 2014, Glickman effectively broke whatever New York chain of residency he previously enjoyed — a period of New York residency that did not begin again for purposes of computing the five-year residency period set forth in NY Constitution, article III, § 7 until Glickman again registered to vote in New York in May 2015.  For this reason alone, we would affirm Supreme Court's order invalidating Glickman's designating petitions.

That said, we are aware that the courts of this state consistently have held that "[t]he question of residence is a factual one, based on a variety of factors and circumstances" (Matter of Stavisky v Koo, 54 AD3d 432, 434 [2008]; accord Matter of Chaimowitz v Calcaterra, 76 AD3d 685, 686 [2010]) and, further, that the burden of proof here lies with objectors, who were required to establish, by clear and convincing evidence, that Glickman did not fulfill the five-year residency requirement in the first instance (see Matter of Weiss v Teachout, 120 AD3d 701, 702 [2014]).  However, even assuming that Glickman did not — as we believe — effectively end his residency in New York solely by registering to vote in the District of Columbia in November 2014, we still are satisfied, upon due consideration of all the relevant factors and circumstances, that objectors met their burden of proof here and that Glickman's designating petitions were properly invalidated.[2]

---

[2]   Contrary to the position adopted by the majority, we do not find the Court of Appeals' decision in Matter of Hosley v Curry (85 NY2d 447 [1995]) to be dispositive — in large measure because Hosley did not involve ascertaining whether the candidate at issue satisfied the five-year residency requirement set forth in NY Constitution, article III, § 7.  More to the point, Hosley

By Glickman's own account, he graduated from college in 2011 and thereafter secured two internships in the greater Washington, D.C. area. After completing his Master's degree in May 2012, Glickman continued to work and reside in that general vicinity. Notably, Glickman lived in what he described as a community organizing house in Washington, D.C. from October 2013 to March 2015. Although Glickman returned to New York shortly thereafter, he continued his consulting position in Washington, D.C. – working remotely from various locations and "crash[ing] at a friend's place" if he "ever needed to go back to [Washington,] D.C. for work." Indeed, Glickman testified that he "[t]echnically" was "still employed" there at the time of the hearing and acknowledged that he did not take a leave of absence from that position until November 1, 2015. Such proof, in our view, when combined with Glickman's 2014 voter registration in the District of Columbia, constitutes clear and convincing evidence that Glickman did not satisfy the five-year state residency requirement set forth in NY Constitution, article III, § 7. In light of this conclusion, we need not consider whether objectors also established that Glickman did not meet the one-year district residency requirement. Accordingly, for all of these reasons, we would affirm Supreme Court's order.

Mulvey, J., concurs.


ORDERED that the cross appeal is dismissed, without costs.

---

stands for nothing more than the well-settled proposition that a domicile, once acquired, continues until an individual engages in conduct that manifests a definitive intent to abandon one domicile and acquire another. We are satisfied that Glickman engaged in such affirmative conduct here and, hence, cannot satisfy the five-year New York residency requirement.

ORDERED that the order is reversed, on the law and the facts, without costs, petition in proceeding No. 3 dismissed, petitions in proceedings Nos. 1 and 2 granted, and the designating petitions naming Steven Glickman as the Democratic Party and Working Families Party candidate for the public office of State Senator for the 55th Senate District in the September 13, 2016 primary election are declared valid.

ENTER:

Robert D. Mayberger
Clerk of the Court